Thank you your honor. It's always an honor to appear before the Sustained Court. It's been many years since I've had the pleasure of doing that and I better. In the great work of satire entitled The Devil's Dictionary, Ambrose Bierce defined legal as compatible with the will of a judge having jurisdiction. And we all know that that is wildly inaccurate in most cases. However, he must have had in mind as an inspiration a rare and exceptional judge such as Judge Kenneth Lewis in this case. We are here because of the disclosure 17 years or so after their creation of a series of letters and documents which came to be known in the lower Missouri courts in the habeas corpus proceedings as the Lewis letters. Those letters have to be considered in the backdrop of the Missouri Code of Judicial Conduct which prohibits ex parte communications and provides that a judge who receives such a communication in a matter, an impending matter or a matter which might be in front of that judge should disqualify himself. It is also, I think, this due process right of every person to be and appear in front of a disinterested judge. What those letters reveal and what later evidence revealed about Judge Lewis were number one. Well, first of all, let me say that when I first saw those letters, those letters were actually discovered quite accidentally by an Associated Press reporter who was tasked with covering the 2008 gubernatorial election in Missouri. And in doing background on one of the candidates, Mr. Hulsof, he was apparently allowed access to the Attorney General's entire trial file. And in that file, in an obscure and unmarked folder, he found these letters. He wrote an article about it. We became aware of the letters. And my first thought after seeing, I had two thoughts when I first saw those letters. Number one, I can't believe that then because in considering the fact that they had been suppressed for all those years through two trials, why did they still exist? That was my second question. I think somebody forgot about them. But what those letters revealed, first of all, number one, the ex parte contact, communication from a victim of a shooting. And which went into, it's a letter, it goes into great detail about this victim's dissatisfaction with the local prosecuting attorney who he said showed no interest in his case. And I think the code of judicial conduct at that point would have required Judge Lewis to have no further involvement in that matter. But instead, he clearly set forth in his letter to Kenny Hulsof, the special prosecutor in the Attorney General's office, and prompted him to call a grand jury. It apparently also prompted him to call a meeting with the local prosecuting attorney, wherein he showed a copy of the victim's letter to Mr. Roberts, the local prosecutor. And essentially, he managed to effectuate the self-disqualification of the local prosecuting attorney. Why don't you assume for a minute that we've read these letters and we've read the special master's report and we can even assume that we agree with the conclusion of the report. Why don't you go on to how that amounts to a constitutional violation for which there's no immunity? Because I think that's the issue, isn't it? Oh, sure it is. And I think what it is, and the lower court determined that we had any facts or anything that supported the conclusion that Judge Lewis had entered into a conspiracy to deny Mr. Woodworth his constitutional rights was pure speculation. And there was no, now we all know, and it's replete throughout case law, that in proving a civil rights conspiracy or any other conspiracy, it's very rare, especially a civil conspiracy, that you're going to you go and look at the circumstantial evidence, the circumstances that support such a conspiracy. And in this particular case, that he conspired with, let's say, with the sheriff's deputy, Calvert, with his personal attorney, Mr. Elliott, who served as a counsel for the illegal private investigation, that as a presiding judge in the 43rd Judicial Circuit of Missouri and a longtime lawyer and judge, he should, he was, or he should have been aware of the specific prohibition of the entry of private influence into a criminal prosecution at any stage of that set forth in State v. Harrington. He had to have been aware of that. And if he wasn't, it was inexcusable that he was not. Mr. Hulshoff himself said that it was the most unusual thing he had ever seen, having a private investigator hired by the victim to be involved, and to have led the investigation by not only the special master, but also Judge Hull, to whom the case was remanded for a third trial. The theory is that Lewis conspired with the sheriff's deputy and the private attorney. Correct. To violate what provision of the Constitution? That would be the due process clause. Violating the due process clause. Did you allege that Hulshoff was a member of the conspiracy? I did allege that. Because it seems to me, it seems that the inference that can be drawn from the circumstances, first of all, Mr. Hulshoff filed an affidavit in support of their opposition to the summary judgment motion that was granted. And in that affidavit, he indicated that there were only a couple of conversations with Judge Lewis before he was actually appointed, and that they occurred between the time that Mr. Roberts, the local prosecutor, disqualified himself, and it was October 7th that the order appointing Mr. Hulshoff was sent to, signed and sent to Mr. Hulshoff. In all of the pre-trial discovery, pre-trial deposition of Mr., pre-hearing deposition of Mr. Hulshoff, in his hearing about this time period of October 5th to October 7th. But the district court makes great, places great emphasis on that limited time period. But it seems to me that the circumstances support an inference of many more conversations that probably took place before October the 5th. And so, and this gets to another aspect of those letters. Those letters set forth, for any experienced trial attorney or judge, explicitly sets forth that there are going to be some huge obstacles to any prosecution of an alternative perpetrator or anybody other than the original person named and fingered by Lyndall Robertson, the victim. And that is I think it's pretty obvious, after 38 years of practice, if I get into a case where I know that my main eyewitness and victim has previously identified somebody else, I've got some serious explaining to do as to why a subsequent person is now the offender. Especially where this prior person that was fingered by the victim happens to be the boyfriend of his daughter. Somebody about whom it would be hard to imagine him making a mistake. With respect to your conspiracy allegations, how do you rely on this Moses versus Whitaker case? Do you have a response to that? Well, I think that what this amounts to is the circumstances suggest that Mr. Hulsof, at the urging of Judge Lewis, was given the message that he was going to have to implicate somebody else. And so the only way that can do that is to suppress the evidence that he's fingered somebody else and have Mr. Robertson fabricate his version of events. I don't believe that he is entitled, pre-indictment, to work with a witness to fabricate his testimony. And if that is going to be the law, then I disagree with that. I think that if you look at Justice Scalia's concurrence in the Buckley versus Fitzsimmons case, he has a hard time understanding why Embler versus Pacman went as far as it did. Because now what you see, the whole underlying basis for that opinion was that the criminal law will take over. If a prosecutor gets caught fooling around with the evidence or fabricating evidence or suppressing evidence, there's always the criminal law, there's always, in subsequent cases down the years, there is always the Bar Association can take care of this. But I don't think it's working. And I think Judge Olson and his dissent, or Judge Kaczynski and his dissent in the Olson case, which we cited, feels very strongly and I think there is a strong move towards recognition. Even in this case, this court's holding, in the McGee versus Pottawatomie County matter, it seems to open the door somewhat for liability for pre-probable cause fabrication of evidence as a cause of action. And I realize that that case was settled after the oral arguments at the Supreme Court, but I think the principles are sound. So, with that, I will conclude my first part. Very well. Here comes Mr. Mike Martinich-Sauder. Thank you, Your Honor. May it please the Court. My name is Mike Martinich-Sauder, and I'm here today on behalf of the appellees, Kenneth Halshoff and the late Judge Kenneth Lewis. In our view, this case principally turns on the resolution of two questions. First, did any of Mr. Halshoff's allegedly improper conduct occur outside the scope of his function or role as a prosecutor? And second, did any of Judge Lewis's allegedly improper conduct occur outside the scope of his role or function as a judge? Because the answer to each of those questions is no, the Court should affirm the grant of summary judgment. I'll start very briefly with the – yes, Judge. Well, what do you think is the law about whether allegedly working with a witness to fabricate evidence, if that were proved, is within the scope of a prosecutor's duty? My understanding of the case law is that there is a line that perhaps is not always perfectly clear, but a line between a prosecutor's judicial activities, working with a witness, and what the Court described. And I think reasoned over as police work, police investigatory work. Certainly, the plaintiff in this case cited a number of cases where prosecutors had played an active role in the true police investigation of cases. And as we argued in our brief, those cases are distinguishable because the prosecutors there were truly on the ground interviewing witnesses, not at the stage of presenting the case to the grand jury, but at the stage of trying to identify who the suspect is and whether or not the case should even make it to the prosecutor's office in the first place. In this case, as I understand the record, the only evidence that even plausibly shows that Mr. Holshoff, you know, engaged in either evidence suppression or the creation of false evidence, and we certainly don't concede that. But as I understand the record, all of that activity occurred once the case was ready to be presented to a grand jury. And that is under Myers, presentation of a case to the grand jury is sort of classic prosecutor work, not investigatory work. And so in our view, that falls sort of squarely within the scope of prosecutorial immunity. How about preparing the witness to testify to the grand jury? I'm not aware of a case that specifically addresses that. But I would argue that preparing witnesses for trial certainly falls within the scope of prosecutorial immunity. And presentation of the case to the grand jury falls within prosecutorial immunity. In that first set of cases, the presentation at trial, the courts have recognized that not all prosecutor work takes place in the courtroom. There's plenty of preparation. And preparing witnesses for trial is essential to succeeding at trial. Similarly, preparing witnesses to testify in the grand jury is essential to getting an indictment. And so I'm not aware of a case specifically on point. But I would argue that the principles of those two sets of cases dictate that preparing a witness for the grand jury would be within the scope of prosecutorial immunity. I'm not sure. I understand your position. Great. What about Lewis? What if he, I think it's alleged, he more or less engineered this prosecution right of Woodward by replacing the prosecutor and designating four men for the grand jury and so forth? Sure. Is that a judicial function? Sure. So I would, in answering that question, I would distinguish between the specific actions that Mr. Woodworth claims Judge Lewis took and the broad claim that, you know, Judge Lewis acted as the prosecutor. I'd like to address the specific actions that Judge Lewis allegedly took because I think the second is more of a rhetorical turn. So the items that you noted, Judge Colleton, appointing the grand juror or the sort of presiding grand juror is a classic judicial function. Missouri law authorizes a judge to preside over and control the grand jury. Now, whether or not Judge Lewis did so for improper reasons or in a legally improper way is a separate question from which function he was engaging in. And I think under Missouri law, and we cited a statute in our brief that I can give you, but under Missouri law, I think it's quite clear that judges have the authority to do things like that. And therefore, it's functionally judicial regardless of whether it was done improperly. With regards to Judge Lewis's interactions with the elected prosecutor, Mr. Roberts, again, this is a situation where there was a case essentially before the court. A potential grand jury prosecution. And the judge met with and spoke with the elected prosecutor, not sort of entirely outside the judicial process, but with regard to a case that was potentially pending before the grand jury. And so, again, it may have been an improper communication. It may have been a communication that ought not to have happened. Well, so it was a – that's a fair question. And it's not a phrase that comes from a case, and I acknowledge that. In terms of a grand jury, it's unlike a case where, you know, there's something on file and it's – As I understand it, it wasn't a pending grand jury at the time. The so-called engineering of the thrall of the elected prosecutor, Mr. Goldstock, is that correct? I believe that's correct, Your Honor. So, obviously, there's always a potential grand jury crime, but it wasn't a pending grand jury crime. Sure. And maybe that was a less than artful phrase. I think it's a case – let me retreat from that phrase and try another one. Judge Lewis had this alleged conversation with Mr. Roberts, not in his everyday life, but in the context of trying to interact with the prosecutor regarding what might become a case. And so that's, again, somewhat inartful. Isn't he, though, sort of jumping into a prosecutorial function at that point? I would say he's not jumping into a prosecutorial function because he is not himself bringing charges. He is not himself deciding whether or not a particular person should be indicted. He is sort of interacting with the prosecutor in the context of whether or not the prosecutor will serve as counsel in a particular case. And I think, you know, Mr. – yes, Judge? Mr. Woodworth analogizes this case to the Lopez case. And I think that, to me, that's his, I think, clearest argument for this vague sort of assuming the prosecutorial role theory. But, again, in that case, the judge actually wrote out the charges, filled out a plea form. And in this case, you know, Judge Lewis did not present the case to the grand jury. He did not instruct the grand jurors to return an indictment. And in Missouri, a prosecutor can file an indictment without a grand jury. And he did not do that here either. What's the case where the judge wrote out the charges? The Lopez v. Vanderwater, the Seventh Circuit case? Well, suppose, though, the evidence were that the judge decided rather than do that directly here, he would appoint a prosecutor whom he could direct toward a particular suspect and suppress information suggesting a different suspect and appoint a grand jury for a person who he thought would go along with what the judge wanted. And, in effect, did the same thing as the Seventh Circuit case, just interacted. I would argue – Or how would you deal with that if that were the evidence here or the allegation? How would you deal with that? Well, I would argue that bringing in the prosecutor, who is an intervening individual who, him or herself, has absolute prosecutorial immunity for bringing those charges and suppressing evidence and the other allegations here, bringing in that absolutely immune intervening person would make this case different from Lopez. I mean, judicial immunity – Just because the prosecutor has independent authority doesn't have to go along with the judge's approach? Yes, Your Honor. And I would point out that the cases treat judicial immunity as a broad immunity. And I think it's important for obvious reasons, but it's important because judges need a degree of leeway in making decisions such as appointing a special prosecutor or appointing a grand jury for a person without the expectation that every sort of unhappy litigant at the end of the case will end up suing them for a deprivation of civil rights. So, in this case, once the attorney general was appointed, the assistant attorney general was appointed, he could have just filed an information as opposed to proceeding with the grand jury? That is my understanding of Missouri law. But I'm not sure – I'm not sure it should be held against him for presenting the case to the grand jury either. But he said he appointed a special prosecutor. He would then investigate the case and could have made a decision himself whether to just file information, but apparently this grand jury was handled by the judge. Correct. Correct. He proceeds with putting witnesses in the grand jury to determine the body. Correct, Your Honor. Correct, Your Honor. And the record does show that Mr. Holshoff, the special prosecutor, independently reviewed the evidence, or at least that's his deposition testimony, and there's no evidence in the record contrary to that. And he explains in his deposition that his independent judgment of the evidence was that it supported presentation to the grand jury. Did he also have statute of limitations problem facing the special prosecutor? Yes. My understanding is that statute of limitations was fast approaching. And I think the evidence suggests that that was a – It would have been easier for him just to file information as opposed to the grand jury process? Certainly based on the factors that we're discussing, yes. I can't speak to – I'm not aware of anything in the record, and I've not discussed the issue with Mr. Holshoff, so I don't know why he chose one rather than another, but I'm not sure that it should be held against him. And I'm not – I do not read Mr. Woodward's briefing to argue that that decision is evidence of a conspiracy. Is your understanding of the evidence that Mr. Robertson at one point actually claimed to have identified Mr. Thomeur, is it? I believe that's the name. I'm not sure of the pronunciation. Is the evidence that Robertson said he actually saw that man commit the crime, or just that he suspected that he committed the crime because of his relationship with the family and so forth? My understanding of the evidence is that Mr. Robertson did in fact say he saw Mr. Thomeur. I do not know from the evidence whether or not he saw Mr. Thomeur's face and recognized him or saw a person who resembled Mr. Thomeur. I am not sort of aware from the evidence. Do you think he saw or something like that? I believe so, Your Honor. Well, what's the evidence about whether Halshoff knew about that when he was appointed or when he presented the case to the grand jury? I think the evidence in the record would permit a jury to conclude reasonably that Halshoff knew. We don't concede it as a factual matter, but I think on review of a summary judgment order,  I think the summary judgment record permits the inference that Mr. Halshoff committed Brady violations. And again, we don't concede that as a factual matter, but I think that the record clearly supports that. Well, you mean that he knew about that and didn't discourse it to the court after the indictment? That's my understanding. Yeah, as far as whether he knew about it preceding the grand jury, I'm not sure that applies. He knew about the supposed identification of Thomeur and still proceeded against Woodward. I don't know which way that goes, but I'm just wondering whether the reference is clear. I'm not sure it's clear, but I think you can give plaintiffs the reasonable inference that when presenting the case to the grand jury, Mr. Halshoff knew that fact. That's how I read the record. Based on the Lewis letters? On the Lewis letters, yes, on the Lewis letters. And I think that would be the principal portion of the record that would support that. I'm trying to search through my mind of what the other evidence on that particular point was, but I do think the Lewis letters. Well, my understanding, and I'm pulling out the Lewis letters now, my understanding is that the Lewis letter to Halshoff, at least a jury could conclude, it included as an attachment the Roberts letter to Judge Lewis. And the Roberts letter, which is at A197, I think itself points out that Mr. Robertson previously fingered Mr. Thomeur. I didn't realize, to make it so clear, that that was allegedly an attachment to one of the Halshoff letters. That's my understanding. That's my understanding. So, yes, I would say that's a fact that does not cut in our favor, but I don't think it changes the functional inquiry, which is the relevant issue. I don't think it changes whether or not Mr. Halshoff was acting within the prosecutorial role or function when he presented the case to the grand jury. And under Myers and cases cited in Myers, a presentation of the case to a grand jury is squarely within the scope of prosecutorial immunity. I'd like to turn to one point that Mr. Ramsey made during his argument, and it relates to the sort of allegedly improper ex parte communications on the part of Judge Lewis. And I would just point out that the judicial canon of conduct that Mr. Ramsey cited, and he described it as such, is a canon that applies only to a case pending before the judge. And so I think any violation of that canon inherently has to fall within the judicial role because any conduct in conjunction with a case pending before the judge falls within the scope of judicial immunity. And so I think that... Which canon are you talking about? Yes, I do not have the number here, but it's a canon. Correct, correct. And so I think merely by alleging a violation of that canon, it sort of inherently brings those allegations within the scope of judicial immunity. And perhaps a stronger argument is before there was a case, the judge was involved in actions that were designed to bring about a case. Why is that outside the judicial role? Sure, I'm not aware of a case that holds that. And I think it would be... Number one, I think there could be a difficult line drawing issue there. But second, judges engage in conduct that relates to sort of not yet pending matters. I mean, convening a grand jury is an action that does not relate to a currently pending matter. And yet it is a judicial function, and it has to be. And so I think conduct... I mean, all of the allegations that potentially relate to a not yet pending case is conduct relating to whether or not the judge would convene a grand jury. And under Missouri law, convening a grand jury is a plainly judicial function. And so I think I find it hard to take that outside the scope of judicial immunity and characterize it as a non-judicial function. And I'm not aware of a case that does that. Correct, he did not preside over any proceedings, any of the trials and any of the proceedings after the grand jury. Well, I'm very close to my time. If the court has any other specific questions, I'd like to address those. I don't want to retrace the content of our brief, so I just ask the court to affirm the grant of summary judgment on behalf of the appellees. Thank you, Your Honors. The actual rule from the Code of Judicial Conduct, the word that's used is impending. Now, I'm not sure that that's actually been defined, but it seems to me to be beyond pending and would encompass the circumstances here. I believe that Mr. Hulsof, in one of his depositions, acknowledged that the word impending would encompass this matter and that the rule should apply to him. Even if it wasn't a pending matter at that point, I think there whipsawed on two points. One is he's out there freewheeling before there's a case acting as a prosecutor. And in his letter to Mr. Hulsof, after talking about the crimes that were to be charged and the statute of limitations that would apply to those charges, he states, we could wait no longer for Mr. Roberts to act. Now, I think it's a fair inference from the use of that word, we, that he intended to he was referring to himself and to Mr. Hulsof, which would raise an inference that they had had many conferences before all this came about and about the details of the case and the problems therein and the problems with Mr. Roberts. And if Judge Lewis, if that rule did apply to him, even before there was a pending proceeding, then he should have removed himself. There would have been no grand jury. There would have been no appointment of a special prosecutor. There would have been no influence brought to bear on Mr. Roberts. And Mr. Roberts, who I believe testified at the habeas corpus hearing and in other areas, there are other documents that support the fact that he did not believe there was sufficient evidence to charge Mark Woodward. What's Mr. Roberts' sad excuse? He didn't have responsibility to remove himself or appoint a special prosecutor. Can any judge do it? Does the government do it? I believe it would be the presiding judge in that circuit, which would have been Judge Lewis. Now, I suppose under the way I read the statute, there wouldn't have been anything to stop Mr. Roberts from going to any judge in that circuit and saying, I have a conflict of interest, would you please contact, would you appoint the attorney general? Or under Missouri law, a judge also has inherent authority to appoint a special prosecutor of his own choosing. It doesn't necessarily have to be the attorney general's office. But why isn't that a judicial act? Well, I'm not really saying that it's not a judicial act. It is. It is a judicial act. But it's the act of, I'm sorry. Why isn't it an act for which the judge is entitled to immunity, the appointment of a pulse shot? Well, I guess it's kind of like a prosecutor that fabricates evidence before anything ever gets going and then tries to immunize himself by presenting the evidence in court. Well, doesn't a prosecutor have immunity for presenting evidence in court? Well, there is a recent case, it's either the Wary v. Fields or one of the other prosecutor cases that holds that you can't, you're not, it's a Seventh Circuit case, you're not at liberty as a prosecutor to go fabricate the evidence before trial and then think that by presenting it at trial, you have therefore availed yourself and cloaked yourself with absolute immunity. Well, if the prosecutor was functioning in an investigative role and then later presented it in court, he's not immune from what he did in the investigative police role. Correct. Is that what you're saying? Yes. But you don't say Judge Lewis or Pulse Shot was in those roles, the police investigative role here, do you? Well, I think to some degree they were. I mean, any time that you look into a matter before you bring charges, I mean, he doesn't, like they said, they didn't, apparently they're taking the position that they had no idea who the suspect was when all this went down. I think there are certain facts that wear against that, and I think there is a matter, there are several matters that are facts in controversy that summary judgment was inappropriate. The fact that there was no particular person that was to be indicted, for example. There is plenty of evidence from which you can reasonably infer that there was a particular person. There were the letters from Jim Johnson to the judge. There was the fact that there is a reasonable inference that Judge Lewis knew all about what was going on with this private investigation that his personal attorney was involved in. I don't think it takes, it goes beyond mere speculation. And then to consider that he appointed his personal attorney to preside over the juvenile proceedings, and he had been the attorney for the daughter of Mr. Robertson in order of protection proceedings, all of which were, some of that was Brady violations and found to be so. So it's a record that is just about as shabby as you can get from top to bottom. And it's like I hear the phrase nowadays, the fish rots from the head down, and I think that's what happened here. All right. Thank you. Thank you for your argument. Thank you both. And please be submitted for the final opinion and recourse.